IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHELLE TREZVANT, ) <br> on behalf of Ronita Williams ) <br>     505 NW Hawthorne Street ) <br>     Lee's Summit, MO 64086, ) <br> ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DOCTORS HOSPITAL, L.L.C. ) <br> Serve: Philip S. Harness ) <br>     4901 College Boulevard ) <br>     Leawood, KS 66211 ) <br> ) <br> And ) <br> ) <br> MICHAEL ESTIVO, D.O. ) <br>     12711 Killarney Street ) <br>     Wichita, KS 67206 ) <br> ) <br>     Defendants. ) | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Michelle Trezvant, by and through her attorneys of record and on behalf of Ronita Williams, and for her cause against the Defendants, and each of them, hereby states and alleges as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff Michelle Trezvant ("Plaintiff") is an individual over the age of twenty-one years and a resident of Jackson County, Missouri, residing at 505 NW Hawthorne Street, Lee's Summit, MO 64086. Plaintiff Michelle Trezvant is the biological daughter and heir of Ronita Williams, deceased, and brings this action on behalf of her mother, Ronita Williams.

2. Defendant Doctors Hospital, L.L.C. ("Defendant Doctors Hospital) is a limited liability company organized and operating under the laws of the State of Kansas. Defendant Doctors Hospital represents and holds itself out to the public as a medical group providing services, including surgical and medical-surgical and spinal-, orthopedic-surgical services, to patients like Ronita Williams in exchange for valuable consideration paid by them. Defendant Doctors Hospital can be served via Registered Agent Philip S. Harness, 4901 College Boulevard, Leawood, KS 66211.

3. Defendant Michael Estivo, D.O., ("Defendant Estivo") is an individual residing at 12711 Killarney Street, Wichita, KS 67206. Defendant Estivo is and was at all times herein mentioned, a physician licensed to practice medicine in the State of Kansas, and holding himself out to the public, and, in particular, to Ronita Williams, as an orthopedic specialist and orthopedic surgeon. At all times relevant herein, Defendant Estivo was the agent, servant, and employee of Defendant Doctors Hospital.

## VENUE AND JURISDICTION

4. Venue and jurisdiction are proper in this Court under 21 U.S.C. § 1391 and 21 U.S.C. § 1332 in that the acts of negligence giving rise to the injuries of Ronita Williams that are the subject of this claim occurred in Kansas, both Defendants are residents of Kansas, complete diversity of citizenship exists among the parties, and there is more than $75,000 in controversy in this case.

## FACTS OF THE OCCURENCES OF NEGLIGENCE

5. On or about April 9, 2012, Ronita Williams became a patient of Defendant Doctors Hospital.

2

6. On March 11, 2013, Ronita Williams carried a preoperative diagnosis of mechanical low back pain L2-L3, degenerative disk disease L2-L3, and relative segmental instability L2-L3. On March 11, 2013, Defendant Estivo performed on Ronita Williams a 360-degree fusion with direct lateral discectomy L2-L3, placement of interbody case, and DBM; posterior fusion with bilateral mass allograft/autograft; and posterior fusion bilateral facet screws into the facets of L2-L3 into the pedicles of L3.

7. On April 1, 2013 Ronita Williams carried a preoperative diagnosis of mechanical low back pain L3-L4, degenerative disk disease at L3-L4, relative segmental instability L3-L4, and status post 360-degree fusion L2-L3. On April 1, 2013 Defendant Estivo performed on Ronita Williams a posterior fusion L3-L4 with bilateral mass allograft/autograft; posterior fusion L3-L4 with bilateral facet screws into the bilateral pedicles of L4; direct lateral retroperitoneal abdominal approach to reposition interbody cage at L2-L3, which has moved laterally right-sided.

8. On May 24, 2013, Ronita Williams presented to Defendant Doctors Hospital with low back pain – lumbar region in the midline – with pain referred to both buttocks. Ronita Williams reported her pain level was a seven on a scale of one to ten, and that her pain had not changed since her surgeries. Ronita Williams at the time was using a Duragesic-25 patch and taking Neurontin and Oxycodone for pain. Mauricio Garcia, M.D., continued her current medications.

9. On June 6, 2013, Ronita Williams presented to the University of Kansas Hospital with neck pain, back pain, and bilateral thigh and groin pain. Dawood Sayed, M.D., noted Ronita Williams recently had a couple of lumbar spinal instrumentation and fusion done at Doctors Hospital, and that she had really had no improvement in her pain. The pain was noted as

constant. After the second surgery by Doctors Hospital, Dr. Sayed noted, Ronita Williams had significant pain into the bilateral lower extremities. The pain in her thighs was noted as burning, sharp, and neuropathic in nature. Dr. Sayed reported he suspected Ronita Williams had nerve injury from the lateral approach of her spinal surgeries, as well as lumbar plexus.

10. On June 14, 2013, Dr. Sayed performed bilateral C4 medial branch block, bilateral C5 medial branch block, and bilateral C6 medial branch block on Ronita Williams at the University of Kansas Hospital. Ronita Williams carried pre- and post-procedure diagnoses of cervical facet arthropathy, cervical degenerative disk disease, and cervicalgia.

11. On June 21, 2013, Ronita Williams presented to Defendant Doctors Hospital with neck and back pain of unchanged severity. Ronita Williams at the time was still using a Duragesic-25 patch and taking Oxycodone for pain. Brian N. Jones, M.D., increased her Duragesic patch to 50mcg.

12. On July 2, 2013, Dr. Sayed performed bilateral C5 medial branch block, bilateral C6 medial branch block, and bilateral C7 medial branch block on Ronita Williams at the University of Kansas Hospital. Ronita Williams reported a 45 percent improvement in her pain since her June 14, 2013 procedure. Ronita Williams carried pre- and post-procedure diagnoses of cervical facet arthropathy, cervical degenerative disk disease, cervicalgia, and chronic pain syndrome.

13. On July 19, 2013, Ronita Williams presented to Defendant Doctors Hospital with back and leg pain, reporting that her pain level was level eight, and the pain was referred to both buttocks, as well as to the anterior aspect of the left thigh and the lateral aspect of the left thigh. Dr. Garcia continued her pain medications and noted Ronita Williams may benefit from lumbar minimal decompression at L2-3 for stenosis claudication and hypertrophy of LF.

14. On August 15, 2013, Ronita Williams presented to Defendant Doctors Hospital low back and leg pain, and Dr. Garcia noted the pain and weakness in Ronita Williams' left thigh had not improved since her lumbar surgery and had gotten worse, noting her leg was thinner. Dr. Garcia prescribed refills for Ronita Williams' Durgesic-50 patch, Neurontin, and Oxycodone.

15. On August 18, 2013, Dr. Sayed performed right C5 medial branch radiofrequency ablation, right C6 medial branch radiofrequency ablation, and right C7 medial branch radiofrequency ablation on Ronita Williams at the University of Kansas Hospital. Ronita Williams reported 80 percent improvement in her right-sided neck pain since her previous two procedures. Ronita Williams carried pre- and post-procedure diagnoses of cervical facet arthropathy, cervical degenerative disk disease, cervicalgia, and chronic pain syndrome.

16. On August 23, 2013, Dr. Sayed performed left C5 medial branch radiofrequency ablation, left C6 medial branch radiofrequency ablation, and left C7 medial branch radiofrequency ablation on Ronita Williams at the University of Kansas Hospital. Ronita Williams carried pre- and post-procedure diagnoses of cervical facetogenic pain, cervicalgia, cervical degenerative disk disease, and cervical spondylosis without myelopathy.

17. On August 27, 2013, Ronita Williams had an MRI of her lumbar spine without contract performed at the University of Kansas Hospital. The radiology report impressions included postsurgical changes with paired transpedicular screws at L3 and L4 and intervertebral spacer at L2-L3; some edema within the adjacent vertebral bodies at L2-L3 compatible with some postsurgical reactive changes; and mild increased signal in the posterior left paraspinous musculature that might be a reflection of muscular strain.

18. On September 10, 2013, Ronita Williams presented to Defendant Doctors Hospital with back pain, reporting her pain was level nine, that her need for pain medication had

increased, that her pain interfered with her sleep more than previously, and that her mobility was worse. Dr. Garcia continued her current pain medications.

19. On September 24, 2013, Ronita Williams presented to the University of Kansas Hospital. Dr. Sayed reported Ronita Williams sought a second surgical opinion in regard to her lower back, as she was apparently being planned for a repeat operation on her lower lumbar spine, possible revision of her hardware. Dr. Sayed noted Ronita Williams was not comfortable with this plan without a second surgical opinion, and he stated he would refer Ronita Williams to a spinal surgeon.

20. On November 5, 2013, Ronita Williams presented to Defendant Doctors Hospital with pain in her entire back. Ronita Williams reported her pain was level ten. Though Dr. Garcia decreased her Duragesic patch to 25mcg for nausea on October 8, 2013, he prescribed a 50mcg Fentanyl patch during this November 5, 2013 visit due to Ronita Williams' level of pain.

21. On November 18, 2013, films of Ronita Williams' spine taken at the University of Kansas Hospital showed an interbody spacer at L2-L3 and screws at L3 and L4. Troy Stuckey, PA-C, noted the screws at L3-L4 were very small in diameter and did not look like they would attach to a rod. Stuckey also noted Sean Jackson, M.D., with whom Ronita Williams also met that day, was not optimistic Ronita Williams would ever achieve solid fusion at L3-L4 secondary to no rods being present.

22. On January 13, 2014, Ronita Williams presented for a CT scan at the University of Kansas Hospital. Dr. Jackson reported the CT scan showed instrumentation at L3-L4 that he assumed was some type of motion preserved device. Dr. Jackson stated Ronita Williams had degenerative changes at L3-L4 and associated stenosis, but said he was reluctant to think any

further surgery would help Ronita Williams' back pain, and he would discourage Ronita Williams from pursuing any additional surgery.

23. On January 28, 2014, Ronita Williams presented to Defendant Doctors Hospital with low back pain referred to both lower extremities, reporting that her pain was level eight, and that her pain occurred more frequently with longer episodes of pain than before. Dr. Garcia continued her current pain medications.

24. On February 14, 2014, Ronita Williams was admitted to the neurology department at the University of Kansas Hospital for a suspected stroke after Ronita Williams reported several falls and a facial droop. Upon discharge February 15, 2014, Michael Rippee, M.D., reported the event was more likely a combination of acephalgic migraine and falls due to chronic low back pain. Ronita Williams was encouraged to use a walker.

25. On or about April 23, 2014, Ronita Williams presented to the University of Kansas Hospital for a neurology follow-up appointment. James L. Southwell, M.D., reported Ronita Williams' low back pain had been prominent, grade 10/10 in severity with radiation into her legs. Dr. Southwell's impressions after examination were Ronita Williams was experiencing episodic confusion and dysarthria likely adverse to medication effect and chronic low back pain. Dr. Southwell decreased Ronita Williams' Gabapentin (Neurontin) and recommended continuation of activity restriction.

26. On May 19, 2014, Ronita Williams presented to Defendant Doctors Hospital with whole body pain, reporting that her pain was level ten, and that her pain had become worse since being taken off Neurontin (Gabapentin) by her neurologist. Dr. Garcia continued Ronita Williams' Fentanyl patch and Oxycodone and gave her a prescription for Gabapentin 600mg.

27.     On June 16, 2014, Defendant Doctors Hospital performed lumbar spine series X-Rays on Ronita Williams. Tim Mihalovich, M.D., found postoperative changes with bilateral pedicle screws at L3 and L4 and moderate multilevel disc space narrowing. His impressions were multilevel spondylosis and postoperative changes within the lumbar spine without compression fracture or listhesis.

28.     On August 14, 2014, Ronita Williams presented to Defendant Doctors Hospital with low back pain referred to both lower extremities, reporting that her pain was level nine, that her need for pain medication had increased, that her pain interfered with sleep more than previously, and that her mobility was worse. Dr. Garcia refilled her current pain medications.

29.     Ronita Williams died February 18, 2015 of causes unrelated to the injuries alleged herein.

## COUNT I
## SURVIVORSHIP ACTION FOR NEGLIGENCE

30.     Plaintiff hereby incorporates by reference all of the above allegations as if fully set forth herein.

31.     Defendant Doctors Hospital, on or about April 9, 2012 to on or about August 14, 2014, through the acts of its agents, servants, and employees, departed from the standard of care and was professionally negligent in the following respects:

   a. Failing to properly manage Ronita Williams' pre-operative care, including but not limited to failing to provide her adequate alternative treatments to a 360-degree fusion with direct lateral discectomy L2-L3, placement of interbody case, and DBM; posterior fusion with bilateral mass allograft/autograft; and posterior fusion bilateral facet screws into the facets of L2-L3 into the pedicles of L3.

8

    b. Failing to properly manage Ronita Williams' pre-operative care including but not limited to failing to provide her adequate alternative treatments to a posterior fusion L3-L4 with bilateral mass allograft/autograft; posterior fusion L3-L4 with bilateral facet screws into the bilateral pedicles of L4; direct lateral retroperitoneal abdominal approach to reposition interbody cage at L2-L3, which has moved laterally right-sided.

    c. Failing to adequately warn Ronita Williams about the risks associated with the above surgical procedures, including but not limited to failing to warn Ronita Williams of the risks of never achieving fusion at L3-L4 leading to the potential for additional surgery and/or lifelong pain management.

    d. Failing to adequately advise Ronita Williams about the advantages and disadvantages of performing the above surgical procedures using facet screws as opposed to pedicle screws with rods, including but not limited to failing to advise Ronita Williams the failure rate for facet screws is high, and little literature exists supporting the safety and efficacy of facet screws in spinal fusion procedures.

    e. Failing to properly manage Ronita Williams' post-operative care, including but not limited to performing a second surgical procedure that worsened Ronita Williams' back pain and improperly managing Ronita Williams' post-operative pain thereafter.

32. Defendant Estivo, on or about April 9, 2012 to on or about August 14, 2014, departed from the standard of care and was professionally negligent in the following respects:

    a. Failing to properly manage Ronita Williams' pre-operative care, including but not limited to failing to provide her adequate alternative treatments to a 360-degree

    fusion with direct lateral discectomy L2-L3, placement of interbody case, and DBM; posterior fusion with bilateral mass allograft/autograft; and posterior fusion bilateral facet screws into the facets of L2-L3 into the pedicles of L3.

b. Failing to properly manage Ronita Williams' pre-operative care including but not limited to failing to provide her adequate alternative treatments to a posterior fusion L3-L4 with bilateral mass allograft/autograft; posterior fusion L3-L4 with bilateral facet screws into the bilateral pedicles of L4; direct lateral retroperitoneal abdominal approach to reposition interbody cage at L2-L3, which has moved laterally right-sided.

c. Failing to adequately warn Ronita Williams about the risks associated with the above surgical procedures, including but not limited to failing to warn Ronita Williams of the risks of never achieving fusion at L3-L4 leading to the potential for additional surgery and/or lifelong pain management.

d. Failing to adequately advise Ronita Williams about the advantages and disadvantages of performing the above surgical procedures using facet screws as opposed to pedicle screws with rods, including but not limited to failing to advise Ronita Williams the failure rate for facet screws is high, and little literature exists supporting the safety and efficacy of facet screws in spinal fusion procedures.

e. Performing the above surgical procedures on Ronita Williams when Ronita Williams, given her medical history, was not an appropriate candidate for these surgical procedures.

f. Performing the above surgical procedures using facet screws instead of pedicle screws with rods.

33. As a direct and proximate result of the negligence of the Defendants, and each of them, Ronita Williams sustained the following damages:

    a. Substantial physical pain and suffering in the form of debilitating back pain such that Ronita Williams could not walk without the assistance of a cane or walker and required extensive chronic pain management prior to her death.

    b. Substantial mental pain and suffering.

    c. Substantial medical bills.

34. The conduct of the agents, servants and employees of Defendant Doctors Hospital, as set out above, show complete indifference to the health, safety, and welfare of Plaintiff's decedent, Ronita Williams, and allow Plaintiff to seek punitive damages as part of actions against Defendant Doctors Hospital.

35. The conduct of Defendant Estivo, as set out above, shows complete indifference to the health, safety, and welfare of Plaintiff's decedent, Ronita Williams, and allow Plaintiff to seek punitive damages as part actions against Defendant Estivo.

WHEREFORE, Plaintiff Michelle Trezvant, on behalf of Ronita Williams, prays for judgment in Count I of this Complaint against the Defendants, and each of them, for a sum in excess of $75,000.00, including punitive damages, that the jury determines to be fair and reasonable, together with the costs and expenses herein incurred, and for such other relief as the Court deems just and proper.

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

## DESIGNATED PLACE OF TRIAL

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Dated: March 9, 2015

Respectfully submitted,

THE POPHAM LAW FIRM, P.C.

/s/ Mark Schloegel
Mark Schloegel KS #26349
Wm. Dirk Vandever MO # 24463
712 Broadway, Suite 100
Kansas City, MO 64105
(816) 221-2288
Fax: (816) 221-3999
mschloegel@pophamlaw.com
dvandever@pophamlaw.com

J. Scott Bertram MO # 23715
Kaitlyn J. Syring MO # 66273
BERTRAM & GRAF, L.L.C.
4717 Grand Ave., Suite 800
Kansas City, MO 64112
(816) 523-2205
Fax: (816) 523-8258
jsbertram@bertramgraf.com
ksyring@bertramgraf.com